**CITY OF COVINGTON, Petitioner,**

v.

**COURT OF JUSTICE, ex rel. ADMINIS-
TRATIVE OFFICE OF THE
COURTS, Respondent.**

**No. 89-SC-695-OA.**

Supreme Court of Kentucky.

Feb. 8, 1990.

Stephen T. McMurtry, Covington, for petitioner.

Frederic J. Cowan, Jr., Atty. Gen., V. Lynne Schroering, Asst. Atty. Gen., Civil Div., Cicely Jaracz Lambert, Chief Legal Counsel, Administrative Office of the Courts, Frankfort, for respondent.

COMBS, Justice.

Petitioner filed this original action in our Court because the respondent is the Admin-istrative Office of the Courts (AOC). The AOC is the staff for the Chief Justice in executing the policies and programs of the Court of Justice. KRS 27A.050.

In March of 1986, the petitioner revised its ordinance for the curfew of minors to prohibit juveniles under the age of eighteen from being in public at night during certain prescribed hours except under limited cir-cumstances. The respondent has refused to involve its court designated workers in enforcing petitioner's curfew ordinance.

The issue presented us is whether court designated workers employed and super-vised by the AOC are required to process juveniles for violations of Covington City Ordinance No. 0-05-89, the curfew ordi-nance, under the Kentucky Juvenile Code. We hold that they are not so required.

Pursuant to Home Rule, municipalities may act in furtherance of a public purpose, so long as the exercise of power is "not in conflict with a constitutional provision or statute." KRS 82.082(1). The petitioner amended its curfew ordinance in an at-tempt to bring it into compliance with the Kentucky Juvenile Code and Juvenile Of-fenders Statute. Respondent maintains that a conflict still exists between the Juve-nile Code and the curfew ordinance, and we agree.

In 1986, the Kentucky General Assembly passed the Unified Juvenile Code, KRS Chapters 600-645, which became effective July 1, 1987. The basis of the petitioner's claim is that violations of the curfew ordi-nance should be classified and processed under the Juvenile Code as "public of-fenses" pursuant to KRS 610.010(1)(a). However, KRS 600.020(37) defines a public offense action as one "brought in the inter-est of a child who is accused of committing a public offense which, if committed by an adult, *would* be a crime." [Emphasis add-ed.] By definition, an adult cannot violate a juvenile curfew ordinance. Therefore, petitioner's ordinance cannot be treated as one falling within the parameters of the public offense classification of the Juvenile Code.

A juvenile committing an act which would *not* be a crime if committed by an adult is defined in KRS 600.020(48) as a status offense action, which is "any action brought in the interest of a child who is accused of committing acts, which if committed by an adult, would not be a crime.... Status offenses shall not include violations of state or local ordinances which may apply to children *such as a violation of curfew.*" [Emphasis added.] The legislature expressly excluded curfew ordinances from the definition of status offenses.

The AOC is not authorized to require its court designated workers to process juvenile curfew violators as public offenders under the Juvenile Code, KRS 610.010(1)(a). The respondent is expressly prohibited from requiring its court designated workers to process juvenile curfew violators as status offenders under the Juvenile Code definition in KRS 600.020(48).

We recently held in *Pierce v. Commonwealth*, Ky., 777 S.W.2d 926 (1989), that a city, by local ordinance proscribing solicitation to commit sodomy, may not redefine the elements of the offense and impose penalties greater than allowed by state statute for the same violation. The ordinance in *Pierce* was an attempt to prohibit local sodomy solicitation by defining the offense more broadly than the state penal code provision, thereby directly addressing criminal conduct which is comprehensively addressed by state statute.

Petitioner here is attempting to force court designated workers to enforce an ordinance that is expressly excluded by the Juvenile Code. "As the General Assembly chose the language used in the statute, we must conclude it did so intentionally and we cannot approve an ordinance which amounts to an enlargement of the conduct proscribed by the act of the General Assembly." *Pierce*, at 928. Covington's ordinance is not only an enlargement of an act of the General Assembly, but is in direct conflict with that portion of KRS 600.-020(48) which exempts curfew ordinances from the confines of a status offense, and is by definition outside the realm of a public offense. It would be in conflict with legislative intent for us to hold the respondent responsible for enforcing Covington's curfew ordinance.

The Juvenile Code does not place authority to enforce juvenile curfew ordinances with the AOC, and therefore, we hold that the respondent is not required to enforce the petitioner's ordinance.

The petition is denied.

STEPHENS, C.J., and GANT, LAMBERT, LEIBSON and VANCE, JJ., concur.

WINTERSHEIMER, J., files a separate concurring opinion.

WINTERSHEIMER, Justice, concurring.

I concur with the result achieved by the majority opinion which is that court-designated workers employed and supervised by the Administrative Office of the Court of the Court of Justice, are not required to process juveniles for violations of a city curfew ordinance. However, it is unfortunate that the agencies of state and local government cannot arrive at a method of working together for the benefit of the public which they both serve.

In my view, the majority opinion still allows police officers who observe juveniles in violation of the Covington curfew ordinance to pick them up, cite them with a violation of the city curfew ordinance and take them home.

Perhaps a more effective method of solving the problem of juveniles who violate local curfew provisions is to charge the parents with endangering the welfare of a minor, KRS 530.060. It is my understanding that this procedure is used in many jurisdictions and obtains satisfactory results because the parents must face their lack of supervision and responsibility for their own children. In addition, an official record is made that could initiate the delivery of social services to the child and the family.